THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
RONALD L. CHENG (Cal. State Bar No. 138892)
Assistant United States Attorney
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644
    Facsimile: (213) 894-3713
    E-mail: Ronald.Cheng@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>STEVEN SUTCLIFFE,<br><br>        Defendant. | CR No. 02-350(A)-AHM<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MODIFICATION OF SUPERVISED RELEASE UNDER 18 U.S.C. § 3583; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD L. CHENG; EXHIBIT |

    Plaintiff, United States of America, hereby submits its opposition to defendant Steve Sutcliffe's Motion for Modification of Supervised Release under 18 U.S.C. § 3583.

//
//
//
//
//
//
//

1    This opposition is based on the attached memorandum of

2  authorities, the attached declaration of Ronald L. Cheng, the

3  attached exhibit, and the files and records of this case.

4                          DATED: January 4, 2008

5                          THOMAS P. O'BRIEN
                           United States Attorney
6
                           CHRISTINE C. EWELL
7                          Assistant United States Attorney
                           Chief, Criminal Division
8

9                          _____

10                         RONALD L. CHENG
                           Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                               ii

1    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2                                    I

3                              <u>INTRODUCTION</u>

4         Defendant Steven William Sutcliffe requests this court to

5    terminate his three-year term of supervised release in this

6    matter.  Defendant was released on July 29, 2005, and has less

7    than one year remaining on his term of supervised release.

8    Defendant relies mainly on his service of the term of supervised

9    release without incident.  That reason alone, however, does not

10   adequately discharge his burden under 18 U.S.C. § 3583(e)(2) to

11   obtain termination of his term of supervised release.  Completion

12   of the term of supervised release is necessary to assure

13   defendant's complete readjustment into law-abiding society.

14                                   II

15                         <u>FACTUAL BACKGROUND</u>

16        The charges in this case stem from defendant's unlawful

17   posting of confidential social security numbers of employees at

18   his former employer and his posting of threatening messages

19   directed to a process server, his employer's former assistant

20   general counsel, and the former chairman of the employer.  <u>United</u>

21   <u>States v. Sutcliffe</u>, 505 F.3d 944, 950-52 (9th Cir. 2007).  These

22   threats included a threat to send the process server "back to the

23   hell from where you came" and a webpage display of personal

24   information regarding the assistant general counsel and her young

25   daughter with an excerpt from the film "Cape Fear," "in which an

26   ex-convict stalks and attempts to kill an attorney and his

27   daughter."  <u>Id.</u>

28        The government charged defendant with making interstate
     threats to injure, in violation of 18 U.S.C. § 875(c), and

transferring social security numbers with the intent to aid and
abet unlawful activity, in violation of 18 U.S.C. § 1028(a)(7).
On April 9, 2002, the magistrate judge initially detained
defendant (CR 7),[1] and after a subsequent grant of bail in the
magistrate court, the district court ordered defendant detained.
(CR 18, 21).

After numerous proceedings involving evaluations of
defendant for competency to stand trial, repeated substitutions
of counsel, and a variety of motions, this Court conducted a
three-week jury trial after which the jury convicted defendant of
three counts of making interstate threats to injure, in violation
of 18 U.S.C. § 875(c), and five counts of transferring social
security numbers with the intent to aid and abet unlawful
activity, in violation of 18 U.S.C. § 1028(a)(7). <u>United States
v. Sutcliffe</u>, 505 F.3d 944 (9th Cir. 2007).

On April 15, 2004, this Court imposed a sentence that
included terms of 46 months imprisonment and three years
supervised release. (CR 390). The Court increased defendant's
criminal history from category I to II and found, "This case is
so beyond the heartland of category one criminal history
offenders who I have the responsibility to sentence that I have
no doubt that increasing it is the appropriate and warranted

_____

[1]     "CR" refers to the district court clerk's record docket
sheet and is followed by the applicable control number. "RT"
refers to the Reporter's Transcript of sentencing proceedings
conducted on April 15, 2004, and attached to this memorandum as
Exhibit A. The reference is followed by the applicable page
numbers. "Motion" refers to defendant's Motion for Modification
of Supervised Release under 18 U.S.C. § 3583 and is followed by
the applicable page and line numbers. "Cheng Decl." refers
declaration of Ronald L. Cheng attached to this memorandum and is
followed by the applicable paragraph and exhibit number.

thing to do."  RT 26, 43.  In crafting the terms of supervised release and in declining to impose a fine, the Court found:

> He has clearly continued his attitude and behavior by refusing to cooperate with the probation office but he submitted this [financial] declaration.  And all the facts and all the circumstances permit me to make the finding, require me to make the finding that he can't pay the fine.  And I don't want to set him up for further altercations with law enforcement officials when he does get out.

RT 68-69.  The Court declined to impose drug and alcohol testing, as well as a proposed condition that defendant disclose his criminal conviction to future employers.  RT 69-70.  Among the conditions imposed, the Court required defendant to participate in mental health treatment, restricted defendant's use of computers and related devices as approved by the Probation Officer.  RT 71-74.  The Court sentenced defendant at the high end of the Guideline range:

> As to my decision to sentence him to the high end of the Guideline [r]ange, it's a reflection of my very considered view that the offenses that Mr. Sutcliffe committed warrant very firm punishment and that he, even through this afternoon, continues to display a refusal to acknowledge that, like every other citizen in this country, he is subject to the evenhanded application of all of the laws.

(RT 75).  With regard to the term of supervised release and attendant conditions, the Court found:

3

1          The fact is, Mr. Sutcliffe, that as a result of

2     the supervised release terms I've just recited, you are

3     going to be subject, far more than most of us, most

4     citizens, to continuing supervision and authority.  And

5     if you have a problem with authority, as your whole

6     life seems to exemplify, you will be digging a huge

7     hole for yourself, one that will undoubtedly result or

8     could result in additional lengthy period of

9     incarceration.

10         If you rebel at those provisions, if you refuse to

11    comply with them, if you bait or antagonize or obstruct

12    the work of whoever is the probation officer, I hope

13    you won't do it, I hope so for a lot of reasons but I

14    have my doubts.  So please take into account these

15    considerations.

16   (RT 76).

17   Defendant appealed his conviction and sentence.  During

18   appeal, defendant filed a motion to stay certain conditions of

19   supervised release, because he had been released on July 29,

20   2005, and intended to challenge those conditions on appeal.  (CR

21   488).  The Court denied the motion, but modified the mental

22   health treatment condition to provide for eight sessions, after

23   which the counseling shall terminate upon a favorable report from

24   the Probation Officer, and modified the restriction on computer

25   use condition.  (CR 467).  The Ninth Circuit affirmed defendant's

26   conviction and sentence in a published opinion.  United States v.

27   Sutcliffe, 505 F.3d 944 (9th Cir. 2007).

28         The government is not aware of any incident during the term

                                    4

1 │ of defendant's incarceration or term of supervised release thus
2 │ far.  Cheng Decl. at ¶ 2.  Nevertheless, continued supervision is
3 │ appropriate for the reasons described below.
4 │                               III
5 │ THE GOVERNMENT REQUESTS THIS COURT TO MAINTAIN THE PREVIOUSLY-
6 │ IMPOSED PERIOD OF SUPERVISED RELEASE
7 │      Defendant seeks early termination of his three-year period
8 │ of supervised release.  The Sentencing Reform Act of 1984
9 │ provides that the Court may, after considering the factors set
10 │ forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C),
11 │ (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a term
12 │ of supervised release and discharge the defendant after the
13 │ expiration of one year of supervised release "if it is satisfied
14 │ that such action is warranted by the conduct of the defendant
15 │ released and the interest of justice."  These factors are as
16 │ follows:
17 │      (a)(1) the nature and circumstances of the offense and
18 │      the history and characteristics of the defendant;
19 │      (a)(2) the need for the sentence imposed --
20 │      . . .
21 │          (B) to afford adequate deterrence to criminal
22 │      conduct;
23 │          (C) to protect the public from further crimes of
24 │      the defendant; and
25 │          (D) to provide the defendant with needed
26 │      educational or vocational training, medical care, or
27 │      other correctional treatment in the most effective
28 │      manner;

1    . . .

2    (a)(4) the kinds of sentence and the sentencing range

3    established for [the applicable category of offense

4    committed, category of defendant, and violation of the

5    terms of probation or supervised release as set forth

6    in the Sentencing Guidelines];

7    (a)(5) any pertinent policy statement [issued by the

8    Sentencing Commission];

9    (a)(6) the need to avoid unwarranted sentence

10    disparities among defendants with similar records who

11    have been found guilty of similar conduct; and

12    (a)(7) the need to provide restitution to any victims

13    of the offense.

14    Supervised release is designed "to improve the odds of a

15    successful transition from the prison to liberty." Johnson v.

16    United States, 529 U.S. 694, 708-09, 120 S. Ct. 1795, 1805, 146

17    L. Ed. 2d 727 (2000). In particular, the goal of supervised

18    release is "to ease the defendant's transition into the community

19    after the service of a long prison term for a particularly

20    serious offense . . . ." 529 U.S. at 709, 120 S. Ct. at 1805.

21    The defendant has the burden to demonstrate that early

22    termination of supervised release is justified. United States v.

23    Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006). In two district

24    court opinions that the Ninth Circuit cited in Weber, the

25    district courts both considered defendants who had fully complied

26    with the terms and conditions of supervised release.

27    Nevertheless, the courts ruled that this sort of "laudable"

28    behavior "is not so unusual as to merit early termination.

1  <u>United States v. McKay</u>, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005);
2  <u>see also</u> <u>United States v. Weintraub</u>, 371 F. Supp. 2d 164, 167 (D.
3  Conn. 2005) ("ongoing and full compliance with all conditions of
4  supervised release . . . is commendable, [but] in the end that is
5  what is required of all criminal defendants and is not a basis
6  for early termination of [defendant's] supervised release").  To
7  permit termination for "unblemished" service ought not in itself
8  warrant termination "since, if it were, the exception would
9  swallow the rule."  <u>United States v. Medina</u>, 17 F. Supp. 2d 245,
10  247 (S.D.N.Y. 1998).

11      As noted above, based on the information available,
12  defendant appears to have behaved satisfactorily so far.
13  Nevertheless, continued supervision is appropriate.  This Court
14  justifiably imposed a severe sentence, including the terms and
15  conditions of supervised release, for defendant's criminal acts
16  and his behavior dating from institution of this case through
17  judgment.  The "nature and circumstances of the offense" alone
18  justify continuing the term of supervised release.

19      Defendant has also submitted a declaration from his
20  landlord, Ms. Ruth Rapoport, who is 78 years of age.  Motion at
21  p. 9.  Defendant suggests that he has developed a good
22  relationship with Ms. Rapoport, to the point where he assists her
23  in her finances.  The Probation Office is in the best position to
24  evaluate defendant's relationship with his landlord, but this
25  position of financial responsibility at a minimum should warrant
26  continued supervision.

27      Moreover, although defendant appears to have found
28  employment as an extra in the entertainment industry, that

employment does not appear to be steady and depends on him finding roles through an agent.  Motion at p. 4, l. 22 through p. 5, l. 10.  In addition, it is unclear what the impact of the current Writers Guild of America strike is on defendant's ability to obtain this kind of employment.[2]  Defendant suggests that the conditions of supervised release prevent him from accepting employment outside this Court's jurisdiction.  If travel is a genuine obstacle, then the best course of action is for defendant to seek the concurrence of the Probation Office to apply to this Court for a modification of the conditions of supervised release under Section 3583(e)(2), not to terminate supervised release.

Of course, the Probation Office is in the best position to assess the need for continued supervision.  On the record before the court, however, defendant should be obliged to complete his term of supervised release.  Under the facts of this case, defendant cannot carry his burden under Section 3583(a)(1) to obtain termination of supervised release.

IV

CONCLUSION

The government respectfully requests this Court to deny defendant's motion.

---

    [2]  Information on the Writer's Guild of America West website (www.wga.org) demonstrates that the strike is ongoing.  See, e.g., "Letter from the Presidents, dated Dec. 28, 2007," available at http://www.wga.org/subpage_member.aspx?id=2692.

8

<u>DECLARATION OF RONALD L. CHENG</u>

I, Ronald L. Cheng, declare as follows:

1.   I am an Assistant United States Attorney for the Central District of California.   I am responsible for handling the matter of <u>United States v. Steven William Sutcliffe</u>, D. Ct. No. CR 02-350(A)-AHM.   This declaration is based on my review of the record and my personal knowledge of the facts and procedural history of this matter.

2.   On December 21, 2007, Mr. Eli Ben-Shmuel of legal counsel's office at the Metropolitan Detention Center advised me that, after consulting his records, defendant did not sustain any disciplinary action during his term of detention and incarceration in this case, which ended on July 29, 2005.

3.   A true and correct copy of the relevant pages of the Reporter's Transcript of the sentencing proceeding conducted on April 15, 2004, is attached as Exhibit A to this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 4, 2008

_____
RONALD L. CHENG

1    UNITED STATES OF AMERICA
     UNITED STATES DISTRICT COURT
2    CENTRAL DISTRICT OF CALIFORNIA
         WESTERN DIVISION
3           -  -  -
     HONORABLE A. HOWARD MATZ
4    UNITED STATES DISTRICT JUDGE, PRESIDING
            -  -  -
5

6   UNITED STATES OF AMERICA,    )
                                 )
7           PLAINTIFF,           )
                                 )
8   VS.                          )    NO. CR 02-350(A)
                                 )
9   STEVEN WILLIAM SUTCLIFFE,    )
                                 )
10          DEFENDANT.           )
    _____)

11

12                    SENTENCING

13      REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          THURSDAY, APRIL 15, 2004

15          LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22

23          KATHLEEN L. MECHANIC, RPR
        FEDERAL OFFICIAL COURT REPORTER
24      312 NORTH SPRING STREET, ROOM 410
         LOS ANGELES, CALIFORNIA 90012
25            PH:  (213) 617-1422

EXHIBIT A

```
 1            LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 15, 2004

 2                          -  -  -

 3                 (COURT IN SESSION AT 3:18 P.M.)

 4            THE CLERK:  All rise.  This court is now in

 5    session, the Honorable A. Howard Matz presiding.

 6            THE COURT:  Good afternoon and welcome.  Please be

 7    seated.

 8            THE CLERK:  Calling Item Number 1, CR02-350(A),

 9    U.S.A. versus Steven William Sutcliffe.

10            Counsel, state your appearances, please.

11            MS. DUARTE:  Good afternoon, Your Honor.  Elena

12    Duarte with case agent Jeffrey Cugno on behalf of the United

13    States.

14            THE COURT:  Good afternoon.

15            MR. SUTCLIFFE:  Good afternoon, Your Honor.  Steven

16    Sutcliffe present.

17            THE COURT:  Good afternoon.

18            MR. REED:  Good afternoon, Your Honor.  David Reed,

19    standby counsel.

20            THE COURT:  And good afternoon to you.

21            All right.  We're here for the pronouncement of

22    judgment and the imposition of sentence on Mr. Sutcliffe.

23            Let me explain how I think we need to proceed here.

24    First of all, I will do what I do in every sentence and that

25    is recite the materials that have been made available to me
```

1    that I have considered for purposes of this sentencing or

2    that were sent to me for purposes of the sentencing.

3            After I do that, I will address the question of

4    whether there's been sufficient notice for any departures I

5    may make and I intend to make some because I don't think

6    there's any legal or procedural barrier to that.

7            I want to make sure that at the conclusion of the

8    proceedings, if Mr. Sutcliffe wishes to appeal his conviction

9    and/or his sentence, he has the necessary paperwork to file a

10    timely notice of appeal and to request the appointment of

11    counsel if he wants counsel to represent him on appeal.

12            There are a couple of preliminary housekeeping

13    matters that I want to make sure are disposed of before I

14    turn to what I've just said.  And I should mention that I've

15    been informed that Tracy Hall, who is one of the witnesses at

16    trial and who was one of the individuals identified as a

17    victim in the first superseding indictment, is here and

18    wishes to be heard, and she will be given that opportunity.

19            Now, in the housekeeping department, I received

20    some time ago, not very long ago, a request by Mr. Sutcliffe

21    for the various competency reports that were submitted to me

22    long before the trial and Mr. Sutcliffe represented that he

23    needed those for purposes of appeal.  I have always believed,

24    and went through considerable efforts to make sure, that

25    those reports were timely made available to Mr. Sutcliffe

1   very shortly after I received those.

2           But in the event for some reason, I know there's

3   been a great deal of back and forth about what happened to

4   information Mr. Sutcliffe's requested or was entitled to and

5   whether it got to him in MDC or not, in an excess of caution

6   and in a continuing desire on my part to give Mr. Sutcliffe

7   all to which he's entitled and that he needs, including for

8   purposes of an appeal, I have asked the clerk to make extra

9   copies.

10          So I would ask the clerk to hand those to

11  Mr. Sutcliffe.  And for the record, in the sequence in which

12  I got those -- and some of these, as I'm going to hand them

13  to you, Mr. Sutcliffe, reflect actual minute orders and file

14  stamped copies showing that they were sent to you.  But in

15  the event for some reason something happened, I have a report

16  Dr. Becker completed on -- or signed on February 24th; I have

17  his second report from March 21st; and I have Dr. Patenaude's

18  -- that's P-A-T-E-N-A-U-D-E -- from August 14th.  All three

19  of those reports were from 2003 directing the clerk to give

20  those to Mr. Sutcliffe, and you can keep those in your

21  possession.

22          MR. SUTCLIFFE:  Thank you, Your Honor.  Your Honor,

23  is the requested --

24          THE COURT:  Could you move the microphone close to

25  you.  We have a new court reporter.  She's not familiar with

```
 1    your voice or with any of the names in the case so try to be

 2    clear as you can.

 3              MR. SUTCLIFFE:  Yes, Your Honor.  Thank you.

 4              Um, does this packet I've just been handed contain

 5    the certificate pursuant to 4241D that's required by the law?

 6              THE COURT:  It does not.

 7              MR. SUTCLIFFE:  It does not?  Is there any

 8    explanation that the Court can give that this was not

 9    provided to the clerk of court?  It's my understanding it's

10    supposed to be provided to the clerk and that the clerk was

11    then to provide it to the attorneys.

12              THE COURT:  Okay.  I'm not going to comment on the

13    accuracy or correctness of your understanding.  It may, in

14    fact, be correct and I know what statute you have in mind in

15    pointing that out.  So far as I know, we never got a

16    certificate and that's why I don't have anything to give to

17    you.

18              MR. SUTCLIFFE:  So for the record, none -- none

19    exists?

20              THE COURT:  So far as I know, none exists in this

21    court.

22              MR. SUTCLIFFE:  Thank you, Your Honor.

23              THE COURT:  All right.  Now, having taken care of

24    that housekeeping matter, let me recite what I have read.

25              I read the presentence -- this is not necessarily
```

1    in the order in which they were received.  I read the

2    presentence report and a number of different letters that

3    were sent to me at different times by different people.  One

4    of those is a letter from Mr. McAfee that I wasn't sure

5    counsel had so I asked the clerk to make it available before

6    I came out on the bench.

7            In addition to Mr. McAfee, I received letters and

8    poems sent by Mr. Sutcliffe's mother, by Sarah Ritts, and

9    those triggered a series of filings requiring that Mr. Reed

10   and Mr. Nicolaysen be given an opportunity to respond and

11   then make their responses available to her, and that was

12   done.

13           I have a letter from Carol Sutcliffe, who is

14   Mr. Sutcliffe's sister-in-law, I believe.

15           I have a letter from Michael Sutcliffe, who is his

16   brother.

17           And those are the only letters that I received.

18           In addition to the letters, which I did read,

19   following the filing of the initial presentence report, I

20   read a document that was filed on March 8th entitled,

21   "Position re sentencing factor brief" filed by standby

22   counsel on behalf Mr. Sutcliffe.  That, of course, is

23   Mr. Reed.

24           I also read the government's sentencing memorandum

25   and objections to the presentence report along with the

1    declaration of Agent Harrill that was filed on February 27th.

2         I read the government's response to standby counsel

3    David Reed's sentencing position paper that was filed on

4    March 15th.

5         I read the addendum to the presentence report.

6         I read the statement -- and I don't know exactly

7    how it was entitled, but I think I have it here somewhere --

8    that Mr. Sutcliffe filed directly.  Yes, I have it.  It's

9    called "Declaration of Steven W. Sutcliffe re Adoption of

10   Position re Presentencing Factor Brief Filed by Advisory

11   Counsel."  He crossed out the words -- he, I think, somebody

12   crossed out the word "standby" and substituted in writing

13   "advisory."  And that's referring to what Mr. Reed had filed.

14   That document, the declaration of Mr. Sutcliffe, was filed on

15   March 30th.  And the important provision in that document,

16   although I may mention a couple of others, is that without

17   waiving any objections and while neither adopting Mr. Reed's

18   claim that his memorandum was filed on behalf of

19   Mr. Sutcliffe nor adopting, authorizing, recognizing or in

20   any other way waiving any objections to my previous order

21   that Mr. Reed prepared and filed a document, with all those

22   qualifications having been noted, Mr. Sutcliffe went on to

23   say, quote, "I hereby adopt the document and, in particular,

24   its conclusions stated therein as though fully set forth

25   hereat."  That's the end of that quote.

1          Those are all of the items that I read for purposes

2     of the sentence.  Is there anything that either counsel for

3     government, Mr. Reed or Mr. Sutcliffe as it were that I did

4     not recite?

5          MS. DUARTE:  Your Honor, there's nothing I'm aware

6     of that you did not recite.  However, I did not receive any

7     of the letters that the Court enumerated except for the

8     letter from Mr. McAfee which the deputy clerk gave me a copy

9     of today.

10         THE COURT:  Didn't you receive Ms. Ritts' letter?

11         MS. DUARTE:  I did not.

12         THE COURT:  Well, do you want to see all those

13    letters?

14         MS. DUARTE:  Yes.  Please.

15         THE COURT:  Okay.

16         MS. DUARTE:  Miss Ritts' letter, Your Honor, it was

17    my understanding that it was filed under seal so it --

18         THE COURT:  Yeah, it was.

19         MS. DUARTE:  But if the Court has unsealed it or

20    will permit me to have a copy, I would very much --

21         THE COURT:  Well, I'll permit you to look at it

22    now.  It's been my consistent practice in all cases to make

23    sure that both sides have access to the same information

24    unless there's an attorney/client privilege issue or

25    something like that, and there have been in this case, where

```
 1    I've excused you.  So let me find those documents.
 2            McAfee's letter you've got?
 3            MS. DUARTE:  I did, Your Honor.  And, Your Honor,
 4    in the interest of saving time, unless the Court is relying
 5    on information in the letters, I can get a copy at a later
 6    time.  I don't need to see it right before the Court imposes
 7    sentence.
 8            THE COURT:  Well, that will help things.
 9            MS. DUARTE:  Perhaps I can --
10            THE COURT:  I can tell you in general that I pay a
11    lot of attention to letters and I did in this case.  The
12    letters from Mr. Sutcliffe's mother, his brother, and his
13    sister-in-law all attest to his being a loyal family member,
14    a good son, a good brother.  They talk a little bit about his
15    relationship with his father, particularly when he was a
16    young man or an adolescent.  They assert that he is not a
17    violent person and that he is trustworthy.  They go beyond
18    that but I think those are the most important points that I
19    recall seeing in those letters.
20            And the letter from Ms. Ritts basically placed in
21    question from her perspective, and I'm not going to make any
22    findings, and I don't think I have to make any findings one
23    way or the other, they provided information about what she
24    thought were claimed were the manner in which Mr. Nicolaysen
25    and later Mr. Reed dealt with Mr. Sutcliffe, and what
```

```
 1   concerns she thought they either expressed or had in trying

 2   to represent Mr. Sutcliffe at the times they were his

 3   lawyers.

 4         So I'll make those available at the conclusion of

 5   the hearing.

 6         MS. DUARTE:  Thank you, Your Honor.

 7         THE COURT:  Just remind the clerk to get them from

 8   me.

 9         MS. DUARTE:  I will.  Thank you.

10         THE COURT:  All right.  Now, before I hear from

11   Miss Hall, let me just acknowledge that both the prosecutor

12   and Mr. Reed cited the Sanders decision and seemed to suggest

13   or state that it required that before this hearing begin, I

14   actually issue some kind of written notice as to how I was

15   going to rule on the various requests for departure of

16   modifications that each side made.  That was a 1994 decision

17   of the Court of Appeals for this circuit.  And in that

18   decision, which is not the actual correct state of the law

19   any more, the defendant was found to have ample notice as to

20   the Court's rulings on the actual sentence, even though the

21   Court did not disclose what it was planning to do until the

22   close of sentencing, because the parties had actually filed

23   briefs on the issues and had argued the issues to the Court.

24         The only rulings I'm going to make and the only

25   considerations that I'm going to address, other than
```

```
 1   explaining where I came out on what I ultimately conclude is
 2   the applicable Guideline Range are in response to positions
 3   that one or the other side made.  And when I say side, for
 4   ease of clarity, I'm going to include Mr. Reed on
 5   Mr. Sutcliffe's side since Mr. Sutcliffe adopted his
 6   position.  But I respect and understand that Mr. Sutcliffe is
 7   his own lawyer or acting in his own right here.  And, of
 8   course, you will have a chance to act as lawyer as well as to
 9   allocute it's called, to give me your views at sentencing.

10           Now, the Burnes case, which the Sanders case cited,
11   was a Supreme Court case from '91.  And that noted that under
12   Rule 32 in the ordinary case, the presentence report and the
13   government's own recommendation will notify the defendant
14   that an upward departure will be at issue and what facts
15   allegedly support it, and that was done here.  The only
16   notice required under Rule 32 is that it be reasonable.

17           Counsel need to be aware that in 2001, in the case
18   called United States versus Hernandez, the Court ruled that
19   when the trial court, at the outset of the hearing, gave
20   notice that he intended to depart upward on a basis that
21   neither side had actually asked for or cited or addressed in
22   its brief, the defendant and his lawyer still had a
23   meaningful opportunity to comment, and there was no plain
24   error, even when that departure was based on entirely new
25   grounds.  So that's not going to be the situation here for
```

1    the reason I already eluded to.

2           After Lopez -- after Hernandez was decided, the

3    Lopez case in this circuit citing it declined to extend the

4    general notice requirement in the Burnes case to the

5    imposition of a condition for supervised release that neither

6    side had addressed.  It said no advance notice was necessary.

7           There is a further acknowledgment of the ruling

8    that wound up being applied by the Ninth Circuit in

9    Hernandez, which is still the law of this circuit, in a case

10   called Williams, which is slightly before Hernandez, that

11   notice to the parties, either side, can come from the

12   district court itself or from the PSR or from a prehearing

13   submission from the government.

14          And as I've said now probably for the third time,

15   those requests, those objections, each side had requested

16   objections of its own, are going to be the ones that affect

17   my sentence and that I will rule on.  I'm not going to come

18   up with anything new or different as I did in the Hernandez

19   case.  So I don't think there's any issue of notice.

20          Before I go any further, do you want to be heard

21   about what I just said, Miss Duarte?

22          MS. DUARTE:  No, Your Honor.

23          THE COURT:  Do you, Mr. Sutcliffe?

24          MR. SUTCLIFFE:  No, Your Honor.

25          THE COURT:  Okay.  Now, I will, after hearing from

```
 1    Miss Hall, because I think we all, the Court and both sides,
 2    need to hear from all entitled or available or requesting
 3    witnesses, after I do hear from Ms. Hall, I'll tell you what
 4    my tentative, but I will say very considered, rulings are on
 5    the various legal issues and factual issues and other
 6    requests submitted by the parties.
 7            Miss Hall, will you please step forward to the
 8    lectern.  Just for the record, state your name and then feel
 9    free to state whatever it is that you would like to be heard
10    about or for me to take into account.
11            MS. HALL:  Thank you, Your Honor.  My name is Tracy
12    Hall, H-A-L-L.
13            THE COURT:  Go ahead.
14            MS. HALL:  Mr. Sutcliffe, the pain and the
15    grievance and the chaos that you caused in my life and my
16    family's life is reprehensible.  But in my heart, I will
17    forgive you.  I don't have a problem with that.  I'm a human
18    being just like you are and I was doing my job.
19            I can only wish the absolute best for you in your
20    life and I hope that when this is over, you will find a way
21    to turn this anger that you have into something very positive
22    because one thing that I do know about you, Mr. Sutcliffe, is
23    you have the brains to do it.  You're a very smart man.  And
24    I hope that you will use that in the right direction and
25    maybe help other people eventually down the road.
```

```
 1          Whatever sentence you receive, however, is
 2   relatively light in comparison to the lifetime sentence that
 3   you were giving me because no matter what happens,
 4   Mr. Sutcliffe, I will always have to look over my shoulder
 5   for you.  I hope your anger goes away but I don't know if it
 6   ever will.
 7          In terms of the Court, I don't know what your
 8   procedures are to make a decision.  Two things that come to
 9   my mind would be please allow no access to the internet or
10   any access to find myself.  If I can speak for the other
11   victims, I would hope that Mr. Sutcliffe would not be allowed
12   to hire an investigator or somebody to go on the computer to
13   try and locate us.  As it is, the minute Mr. Sutcliffe is let
14   out, it is my plan to move out of state and basically have to
15   go into hiding until I feel safe enough in my own heart that
16   I'm not going to be in any danger any more.
17          I also ask if the Court can consider possible anger
18   management or counseling for his own sake.  I know that just
19   being behind bars probably is punishment but it's certainly
20   not a solution.  And I can only ask the Court to take those
21   two things into consideration.
22          And I thank you for your time.
23          THE COURT:  Okay.  Thank you, Ms. Hall.  Is there
24   any other person who has an interest in the case that this is
25   part of who wishes to be heard?  Okay.
```

```
 1              MS. DUARTE:  I don't think --
 2              THE COURT:  Hearing no response -- did you want to
 3      say something, Ms. Duarte?
 4              MS. DUARTE:  I don't believe there is, Your Honor.
 5              THE COURT:  Okay.  Okay.  Let me turn then to the
 6      issues that have been raised in the various filings because I
 7      think there's a fundamental need to make it very clear at the
 8      outset what I am pretty confident is the correct way to reach
 9      the applicable Guideline Range.
10              In the process of doing that, I will rule on the
11      various requests that the parties made.
12              First of all, as the addendum notes, in its initial
13      response, the government asks that certain paragraphs 12, 20A
14      and 37, be corrected for minor factual inaccuracies.  That
15      has been done.  So there's no need to comment on those.  They
16      don't really have a bearing on my sentence.
17              The government has moved as to Counts 5 through 9,
18      the violations arising out of the posting of the Social
19      Security numbers for a two level increase in the applicable
20      offense level under either or both of Sections 2B1.1(b)(8),
21      and I intend to grant that request.  I think both of the
22      grounds apply, the so-called relocation ground under
23      Subsection (a), and the sophistication ground under
24      Subsection (c).  They warrant the two level increase that the
25      Guideline speaks about.  Here are my findings on that
```

1    request, although it's not a two level increase times two.

2    It's only a single two level increase and it's only

3    applicable, I want this to be clear, to Counts 5 through 9,

4    and the calculation for the offense level there.

5            I think as to Subsection (c), the evidence in this

6    case, which I remember very, very well -- it was an extremely

7    memorable trial and it wasn't that long ago -- clearly and

8    convincingly demonstrated that defendant, as I already had

9    reason to know, possessed at the time he committed these

10   crimes, a technological prowess relating to computer skills

11   and computer software, computer hardware, the internet, and

12   various unusual and sophisticated applications of those

13   skills over the internet that go way beyond what is the usual

14   manner in which crimes of these nature -- of this nature

15   typically are committed.

16           And even if the defendant had not been representing

17   himself and hadn't through his rather impressive questioning

18   displayed indeed at times, I think enjoyed displaying to the

19   point of showing off, that technological brilliance, I

20   probably would have been able to make that finding.  But in

21   his questioning, particularly of the numerous witnesses who

22   authenticated the creation of various web sites as part of

23   the spider webbing pattern, the FBI agents, there was more

24   than one who were on the trail and trying to figure out how

25   to locate him and how to stop the criminal conduct that led

1    to the indictment.  The means that he used to carry out the

2    scheme reflected remarkable sophistication, not just slight

3    or incremental or marginal.

4         The case the government cited, the Aragbaye case,

5    which upheld the application of the two level enhancement,

6    did not even involve anything close to this degree of

7    sophistication.  It included creating web sites, switching

8    them around, relocating them, having multiple access to other

9    sites -- this is part of the spider webbing context which it

10   took me awhile to understand but I think I do and I think the

11   jury did, in the various web sites that he created and

12   manipulated, he incorporated audio features and visual

13   images.  And this was a capacity that he displayed, not only

14   for purposes of communicating the threats that are the

15   subject of other counts, but carrying out the scheme to

16   violate the privacy rights of those individuals who were

17   affected by the Social Security violations under 1028, 1028

18   referring to the section.

19        In addition, as to Subsection (a) of 2B1.1(b)(8),

20   as I already indirectly eluded to, it's a strange concept,

21   this issue of relocation to avoid detection or perpetuate the

22   fraud or make it more difficult to bring it down.  These

23   multiple web site locations and multiple web hosts were

24   accompanied by, as the government pointed out, the equivalent

25   of taunts.  Exhibit 21 is an adequate example of that, where

1    Mr. Sutcliffe warned those on his trail that for every site

2    they managed to take down, he would put up two others.  And

3    at times it appeared that he was doing that.

4             This was a pervasive attempt by Mr. Sutcliffe to

5    avoid detection by taking advantage of means that only he or

6    few others, I can't say only he, but he and very few others

7    could display in order to appear to be what I think he wanted

8    to be, or at least seemed to be in the eyes of others, which

9    was invulnerable and indomitable.  He's a man of strong will

10   and I think he enjoys being in the position of one against

11   the odds or one against many.  And this was a very available

12   and carefully constructed means for him to do that.

13             So I think the government's position is correct on

14   that enhancement and that would add two levels to the base

15   offense level for Counts 5 through 9.

16             Now, the government has requested an upward

17   departure under a different section, 2A6.1, asserting that

18   the defendant's conduct involves substantially more than two

19   communications to the same victim and a prolonged period of

20   making harassing communications to the same victim.

21             Now, the application of this enhancement is

22   addressed at paragraphs -- I think sufficiently addressed at

23   perhaps 38 and 39 and 46 as to Hall only.  There is not a

24   dispute in the case that as to Hall, although only two

25   communications were issued, three -- that were indicted,

```
 1    three were made.  There have to be a greater showing -- I am
 2    going to adopt the two level enhancement that is recommended
 3    by the probation office in paragraphs 38, 39 and also 46, but
 4    I'm not going to go beyond that.  So to the extent the
 5    government was asking then an additional two levels be added,
 6    I deny that request.
 7          The government's requested an upward departure
 8    pursuant to 5K2.0, and I am not going to grant that because I
 9    think most of the factors that the government cites go either
10    to the fact that the defendant's criminal history is grossly
11    understated, and I agree with the government on that, and I
12    do intend to enhance the criminal history category but no
13    offense level, and I'll explain why later, or to where I
14    should come out on whatever I conclude is the ultimate
15    Guideline Range.  Factors such as intensity and persistence
16    and absence of remorse are aggravating but they're otherwise
17    accounted for in different applications, fair-minded
18    applications of the Guidelines.  And to apply them more than
19    once or to book it away would be unfair to the defendant.
20          The Bell case and the Hines case, which I looked at
21    carefully, involve, in the case of Bell, a very long and
22    troubled history with the IRS; in the case of Hines, a real
23    psychopath.  And those are very factually different.  The
24    language might permit it but the facts here don't warrant it,
25    and I'm not going to do the 5K2.0 upward departure that the
```

1    government requested.

2           As to Count 4, the challenge to the six level

3    increase for conduct that evidenced an intent to carry out

4    the threat to Miss Greenwood, I know that that's been

5    challenged by the defense side.  But I think the challenge is

6    unpersuasive and unwarranted.  And I intend to enhance the

7    applicable offense level for Count 4 accordingly.  I do so on

8    the basis of the following findings and rulings.

9           The language of the Guidelines talks about conduct

10   that evidences an intent to carry out the threat.  And think

11   about what that means.  It means that the person determining,

12   and in this case, of course, the judge, whether or not the

13   enhancement is applicable has to look at the evidence to see

14   whether there's conduct that is consistent with or suggests

15   in a -- and I'll find it on a clear and convincing basis --

16   that there was an actual intent.  It doesn't require proof

17   that there was subjective intent reflected in the most

18   unequivocal, direct and unassailable fashion, such as an

19   admission at the trial or at the sentencing or in connection

20   with presentence reports.  It doesn't say that the

21   enhancement isn't bookable when the defendant actually and

22   subjectively did intend to carry out the threat.  It talks

23   about evidence that -- conduct that evidenced such an intent.

24           And here, in the case of Greenwood, um, when the

25   defendant who knew her specifically referred to her, posted

1    her address, attached a map, included a picture, added to the

2    level of objectively indisputable and subjectively apparent,

3    because she did testify at the trial, fear, he had dealt

4    directly with her, unlike some of the cases that Mr. Reed

5    cited, where the enhancement was applied, even though the

6    speaker didn't actually know the victim, such as the would-be

7    presidential assassins, he said that he was coming to collect

8    personally and the fact that he was armed is not in question.

9            The evidence would prove beyond a reasonable doubt

10   that the weapon that was seized in New Hampshire he had had

11   for some time while he was in California.  It was a rifle

12   with a bayonet capacity.  He told Winnick, a different

13   victim, but he had -- but there was evidence shown that he --

14   this is conduct that shows an actual intent that he was

15   armed.  I know he said, and I'll refer to this later on, that

16   he meant that he was armed with information.  I don't find

17   that that was his actual state of mind.  He was armed.  And

18   the Hines case, which the government cited, supports this

19   finding.

20           I want to go back because I want to make sure that

21   to the maximum extent I can, I know the facts before I

22   disclose where I intend to come out, after I hear from both

23   sides about these rulings.

24           When I was making finding as to the applicability

25   of 2B1.1(b)(a), I forgot to incorporate by reference the

```
 1    evidence submitted by Agent Harrill in his declaration, which

 2    was part of the government's memorandum, as to the level of

 3    sophistication that was inherent and a necessary part of

 4    Mr. Sutcliffe's crimes.

 5            Now, there was a statement in Mr. Harrill's

 6    declaration that raised an issue that I never asked about at

 7    trial, I probably wouldn't ask about now, but it cries out

 8    for clarification.  At paragraph three, Frank Harrill says,

 9    quote, "During the trial I saw a man I recognized as Richard

10    Lee Weatherman in court nearly every day.  During the course

11    of the investigation, I learned that Weatherman is an

12    acquaintance of Sutcliffe's."

13            What is that about?  And I think that

14    Mr. Weatherman's here again today, right?

15            MS. DUARTE:  That's -- that's correct, Your Honor.

16            THE COURT:  Okay.  Are you Mr. Weatherman in the

17    green shirt?

18            MR. WEATHERMAN:  I am.

19            THE COURT:  Okay.  Well, I saw you at the trial day

20    after day.  I had no idea who you were and now I know who you

21    are.  Who is he?

22            MS. DUARTE:  The reason that was in there, Your

23    Honor, is I believe that a portion of my brief that talks

24    about how Mr. Sutcliffe put his web site in names of

25    acquaintances cited to that paragraph.  And I didn't know --
```

```
 1    I didn't have a factual basis for that in the trial record
 2    because who Richard Weatherman was, although his name was
 3    mentioned a lot at trial, it was all over the records --
 4              THE COURT:  It sure was.
 5              MS. DUARTE:  -- It was never established that he,
 6    rather than being some other nefarious, unknown character who
 7    perhaps was perpetuating this whole thing, was actually known
 8    by the government to be an acquaintance of Mr. Sutcliffe.
 9    Um, and because I had wanted to put that in my papers, I
10    needed a factual basis.  I knew that Frank Carol knew that.
11    I asked him to put it in the declaration.
12              THE COURT:  Okay.  Moving on.  I already indicated
13    that I intend to grant the government's motion to increase
14    the applicable criminal history classification from one to
15    two under Section 4A1.3.  Um, and that was probably the
16    easiest of these rulings for me to make.  But I looked into
17    it very carefully.
18              The government is correct in noting that according
19    to the undisputed facts that are set forth beginning at
20    paragraph 75 of the presentence report -- and when I refer to
21    the presentence report, I'll just make it clear that I'm
22    including the report as revised and submitted as part of the
23    addendum -- there are five actual convictions that
24    Mr. Sutcliffe sustained that are not accounted for.  There
25    were at least six arrests that were not accounted for.
```

1          The behavior that neither resulted in a conviction

2    nor even an arrest but that was facially unlawful, and in any

3    event a very chilling indication of the consideration as to

4    how likely it is that he would commit further crimes is that

5    he undoubtedly and indisputably set up this killercop.com web

6    site; tried to arrest via citizen's arrest a law enforcement

7    officer carrying out his duties in a courthouse; the

8    indication that his wife has made, I'm not making any

9    findings but it's in the record, and it resulted in an

10   issuance of a domestic restraining order in New Hampshire

11   that he was prone to violence or at least she claimed; and

12   the demeanor that she displayed when she testified at the

13   trial I find to be not only consistent with that but probably

14   the result of that.  It was a demeanor combining both

15   profound fear and embarrassment as well as enmity.

16          The Martin case, the Goshea case, the Hines case, I

17   read them all, warrant this change in the applicable criminal

18   history category.  And I stress that the change under 4A1.3

19   is warranted either where there is an understatement or an

20   underrepresentation of the previous criminal history and its

21   seriousness, which I find indisputably the case here; or an

22   underrepresentation of the likelihood as to whether the

23   defendant will commit further crimes.

24          Now, I'm no prophet and it's hard to make

25   predictions.  And the many -- and the people who did write to

```
 1    me about Mr. Sutcliffe, although I got no letter from him,
 2    have stated that he has actually expressed remorse, there's
 3    nothing in the record that I see that is consistent with
 4    that.  It could be that he actually feels it and maybe we'll
 5    hear from him.
 6            But these bizarre acts undertaken by a man who is
 7    found to be competent to go to trial and, as Tracy Hall
 8    indicated, is possessed with an extremely acute mind, cause
 9    me very real concern that the criminal history classification
10    of one totally ignores both aspects that warrant an increase
11    under 4A1.3.
12            Now, I sentence lots of people and I'm frequently
13    asked and I not infrequently agree that a criminal history
14    category overrepresents the seriousness of a person's past
15    criminal behavior or the likelihood that he'll commit crimes
16    in the future.  And when I reach that conclusion, I depart
17    downward or I reduce the criminal history classification.
18            This case is so beyond the heartland of category
19    one criminal history offenders who I have the responsibility
20    to sentence that I have no doubt that increasing it is the
21    appropriate and warranted thing to do.  So that's what I'm
22    going to do.
23            Now, there is one provision in the presentence
24    report applicable to Counts 5 through 9 that Mr. Reed on
25    behalf of -- I won't say on behalf of, I want to be
```

```
 1    careful -- that Mr. Reed has challenged, Mr. Sutcliffe has
 2    joined in, as to whether or not that enhancement for
 3    violation of the TRO is warranted.  Now, that was addressed
 4    in paragraph 53 of the presentence report I believe.  Let me
 5    get my notes and see if I'm right.  Yeah.  I don't think that
 6    that enhancement has been proven, not even by a preponderance
 7    of the evidence.  And I'm inclined to agree with Mr. Reed and
 8    Mr. Sutcliffe about that.  And I thought so at the trial.
 9            It is undoubtedly the case that the TRO was issued
10    and there's no dispute that it came about because
11    Mr. Sutcliffe had previously worked at Global Crossing.
12    That's the genesis of this whole series of criminal acts.
13            But there was no evidence that the Social Security
14    numbers were -- only by remote inference that they were
15    obtained after that TRO was issued which was after his
16    employment had been terminated.
17            And I sat in the course of the trial, and I don't
18    think this was raised in the defense briefs, but I sat there
19    wondering whether with his phenomenal skills, he had simply
20    hacked onto some site.  After or before wasn't clear.  But
21    even hacking, I don't think, would have violated the TRO.
22    That's arguable.  It would have violated the spirit of it.
23    It may not have violated the letter of it.
24            But there was evidence of the record -- in the
25    record that suggested that other people had access to these
```

```
 1   web sites and responded to his invitation to send information
 2   and that's how he got their names.  Maybe Mr. Weatherman
 3   helped him out.  Who knows?  Who knows who Mr. Weatherman
 4   worked for?  Who knows how he got this information?  But I
 5   don't find that the evidence is sufficient to warrant the
 6   enhancement so I'm not going to do that unless I'm talked out
 7   of it.  Each side will have a chance to address these
 8   rulings.
 9         Now, I think that chance is now upon us because
10   after I hear from the responses to my preliminary rulings, I
11   will then walk you through what I think is the required
12   calculation because I think that the presentence report, even
13   as amended, was erroneous in the way it was structured and
14   the way the offense levels were determined.
15         I reach that conclusion and I am quick to
16   acknowledge this in part as a result of an analysis given to
17   me by a special probation officer who works with certain
18   judges in connection with actual sentences.  And I'll tell
19   you what I'm eluding to later.  But whatever I conclude will
20   depend upon whether I stick to these rulings.  So let's hear
21   from both sides first.
22         Do you want to be heard on anything I've said?
23         MS. DUARTE:  Yes, Your Honor.  Um, in regards to
24   the Court's last, um, tentative on the TRO application of the
25   four point enhancement, I -- for some reason, I'm unable to
```

1    Agent Cugno had reminded me while we were siting here that
2    there was testimony from Miss Troxell at trial that the
3    payment computer, which she oversaw, was a stand-alone
4    computer which was kept in a locked room.
5            She also testified that she had recognized some of
6    the material on the web site from that computer.  And she
7    testified that Mr. Sutcliffe had come and picked up the
8    computer and brought it back.  And that computer, because it
9    was a stand-alone in a locked room, would not have been
10   connected to the internet.  Therefore, it would not have
11   been -- the Court -- the Court I believe used the term
12   hacking, and it's my understanding that that computer would
13   not have been able to have been hacked in the manner that I
14   believe the Court was -- was commenting on and I wanted to
15   bring that to the Court's attention.
16           THE COURT:  Okay.  Thank you.
17           MR. SUTCLIFFE:  May I respond to the
18   prosecutor's --
19           THE COURT:  You really don't have to because I'm
20   not going to change my finding on that.
21           MR. SUTCLIFFE:  Okay.  Thank you, Your Honor.
22           THE COURT:  All right.  Here's the way I think the
23   calculations shake out.
24           As to Count 4, which will drive the applicable
25   sentence, along with whatever I conclude on Counts 5 through

1    9, the adjusted offense level, before we take into account

2    factors arising out of multiple counts and grouping, is 18,

3    consisting of a base offense level of 12 and a 6 level

4    enhancement for conduct evidence in the intent to carry out

5    the threat.

6            For Counts 1 and 2, it's 14.  Those are the Hall

7    counts.  Base offense level 12, enhancement of 2 for multiple

8    threats to the single victim.

9            For Counts 5 through 9, it's 8, consisting of a

10   base offense level of 6, and an enhancement of 2, for either

11   or both but only a single increase of 2, under 2B101(b)(8)

12   for the reasons I said before.

13           So you have an adjusted offense level of 18 for

14   Counts 1, 2 and 4; and 8 for Counts 5 through 9.

15           If you go to the applicable principles of grouping

16   under 3D1.2 and 3D1.4, you wind up with two units and a two

17   level increase in the bottom line offense level.  So that

18   would mean a total offense level of 20; a criminal history

19   category of 2 for the reasons I already noted; and although

20   it was not my intention to come out with any particular

21   Guideline Range, it turns out that under these changes and

22   rulings, the Guideline Range works out to be the same that

23   the probation office originally concluded under an entirely

24   different set of calculations, namely 37 months at the low

25   end and 46 months at the high end.

```
 1            Before we go any further, do you want to be heard
 2    about those calculations?
 3            MS. DUARTE:  Briefly, Your Honor, and perhaps I
 4    misunderstood.
 5            The Court's calculation for Count 4 was a total of
 6    18, I believe the Court said?
 7            THE COURT:  Yeah.
 8            MS. DUARTE:  The probation officer in paragraph 50
 9    recommended 20 and I might have missed it --
10            THE COURT:  Yeah, there were multiple counts.
11    Yeah, I forgot to include that.
12            MS. DUARTE:  Okay.
13            THE COURT:  But that comes in -- let me see about
14    that.
15            The multiple count, Mr. Yung?
16            MR. YUNG:  Yes, Your Honor.
17            THE COURT:  The 2 level that goes beyond 18 results
18    from the grouping under 3D1, doesn't it?
19            MR. YUNG:  Yes, Your Honor.  I believe the --
20    Miss Duarte is referring to a plus-2 adjustment for multiple
21    threats against Miss Greenwood; is that -- or the multiple
22    threats under Count 4; is that what you're referring to?
23            MS. DUARTE:  That's correct, paragraph 46.
24            THE COURT:  Yeah.  And I meant to make a ruling on
25    that.  You need to tell me how many threats there were
```

```
 1    against Greenwood and what the evidence is to show that there
 2    were three or more.
 3              MS. DUARTE:  Well, first --
 4              THE COURT:  I know about the one that was charged
 5    in Count 4.
 6              MS. DUARTE:  I -- I think the confusion is, Your
 7    Honor, is that -- and it's probably mine -- I didn't think
 8    that for this enhancement, and it doesn't look from paragraph
 9    46 like it does, I didn't think it had to be against the
10    same --
11              THE COURT:  It does.  That's where the -- that's to
12    what I was eluding when I said there was an error pointed out
13    to me by the supervising probation officer, that's not quite
14    his title, in the calculation.
15              MS. DUARTE:  If I could just look for a moment at
16    what I was looking at then on the applicable provision.
17              THE COURT:  You're looking at 2A6.1(b?)
18              MS. DUARTE:  2A6.1.  I am -- I will be in just a
19    minute, Your Honor.
20              If the offense involved more than two threats and
21    it was not --
22              THE COURT:  It's the offense -- the -- Greenwood is
23    grouped differently than Hall because this is the kind of
24    situation we have separate individual victims.
25              MS. DUARTE:  Okay.
```

```
 1              THE COURT:  So the offense, the way I now
 2    understand it and the way that term is used in 2A6.1(b),
 3    Subsection 2, means the offense involving Greenwood, not all
 4    of the offenses of a comparable type which would have
 5    included those involving Hall or the threats to Labaton and
 6    Block.
 7              MS. DUARTE:  I understand, Your Honor, that it
 8    would not include, because that would be double counting,
 9    multiple threats involving Hall for which there were and for
10    which the adjustment was already made.
11              However, since there were excess threats not
12    counted in the Hall computation, and it does not say to the
13    same victim, I was under the impression --
14              THE COURT:  But if you added two for Hall, you
15    would come out with a lower offense level because you don't
16    have the six applicable to Hall arising out of evidence --
17    conduct evidencing a specific intent to carry out the threat.
18              MS. DUARTE:  You didn't find the six as to Hall,
19    Your Honor.  You found it as to Greenwood.
20              THE COURT:  I know it.  And now you're asking me to
21    take into account Hall there with three or more threats.
22    You're asking me to --
23              MS. DUARTE:  No, two or more, Your Honor.
24              THE COURT:  Even two or more.  If you could
25    establish in the record that there were 2 or more as to
```

1    Greenwood, then the bottom line total offense level for the

2    875 counts could be increased by an additional 2 levels the

3    way the probation officer originally suggested.  But I'm

4    looking for the evidence that would support that as to

5    Greenwood.  Because if you look at the language of 2A6.1,

6    although it doesn't go through this analysis quite as

7    painstakingly as I've just tried to, it refers to the same

8    victim in determining the application of Subsection (b)(1),

9    (b)(2) and (b)(3).  You're talking about the same victim.

10    You're talking about Greenwood.  She has the six level --

11    it's as to Greenwood that the six level enhancement for the

12    conduct evidencing an actual threat and actual intent to

13    carry out the threat applies.

14            MS. DUARTE:  I understand.  I now see that the

15    Court is looking at the commentary of the application now.

16            THE COURT:  Yeah.  That's exactly what I'm looking

17    at.

18            MS. DUARTE:  And I thought I had looked at it but

19    it does appear to indicate that it's -- by saying the victim,

20    it looks like it is the victim.  I didn't realize that.

21            Could I have just a moment?

22            THE COURT:  Yes.

23            (Discussion had off the record.)

24            MS. DUARTE:  Um, Your Honor, after conferring with

25    the FBI agent, the dedicated comment that is in the record

```
 1    that came out at trial and was displayed at trial for the web

 2    page that was dedicated to Ms. Greenwood is also a threat.

 3    Other than that, I can't think of anything right now that's

 4    in the record.

 5              THE COURT:  Yeah, but it has to involve more than

 6    two.  Just two isn't enough under (b)(1) -- or I mean (b)(2).

 7              MS. DUARTE:  So you're counting the dedicated as

 8    part of the whole and coming to collect from you personally

 9    and --

10              THE COURT:  How many different communications did

11    this defendant make as to Greenwood that you can point me to

12    in the record?  You need to have three to get that additional

13    two levels as to Greenwood.

14              MS. DUARTE:  Understood.  Within Exhibit 20, which

15    was the web page and subsequent pages exhibited at trial, he

16    made a number of separate and distinct communications to her.

17    We charged a number of those together in the indictment as a

18    single threatening communication.  I don't recall offhand

19    whether the dedicated was in there.  But if it was, then

20    certainly the I am coming to collect from you personally, I

21    don't believe, was charged.

22              THE COURT:  Okay.  Let me tell you what.  After the

23    trial was over, I kept with me for purposes of showing up my

24    very vulnerable memory a printout of the document you used on

25    your closing statement.  It's this item that summarized the
```

```
 1    evidence.  And in the evidence of threats concerning Count 4,
 2    you spelled out Exhibit 231, that's where I think dedicated
 3    refers to, this is all far from over, the picture of the
 4    victim and her daughter, I'm coming to collect the map, the
 5    music.
 6             Now, do you have that document before you
 7    because --
 8             MS. DUARTE:  That Exhibit 231, Your Honor, is
 9    probably -- I do not have that document that you're looking
10    at.  I have some -- those are the notes from my closing
11    argument.  I do have a memory of it.  Exhibit 231 is a
12    reference to a defense exhibit which I probably discussed to
13    corroborate my argument.  However, what you just described,
14    Your Honor, I probably would have referenced as Exhibit 20
15    which was actually the web page -- series of web pages
16    containing the threat charged in Count 4.  But every single
17    threatening line in there that I displayed at trial and that
18    I probably argued as -- as connection and -- excuse me -- as,
19    um, surrounding evidence of the intent to threaten -- because
20    remember, Your Honor, I didn't just have to prove the threat
21    that I charged in Count 4 was articulated.  I had to prove
22    that surrounding circumstances indicated --
23             THE COURT:  Yes, I do remember.
24             MS. DUARTE:  And so I probably --
25             THE COURT:  And you proved it very, very clearly
```

1    and beyond a reasonable doubt.

2            MS. DUARTE:  Thank you, Your Honor.  But I

3    probably, in doing that, I'm certain that I referenced

4    phrases and things that Mr. Sutcliffe communicated in that

5    series of web pages that were not charged.

6            THE COURT:  Okay.  Do you have Exhibit 64 here?

7            MS. DUARTE:  I -- I do not, Your Honor.

8            THE COURT:  Do you have exhibit --

9            MS. DUARTE:  I can tell you what Exhibit 64 is.

10           THE COURT:  Is it a document that says this has now

11   become very personal?

12           MS. DUARTE:  Correct.

13           THE COURT:  Was that sent to Greenwood?

14           MS. DUARTE:  That was on the web site.  Whether or

15   not it was actually physically sent, and she did --

16           THE COURT:  Well, okay.

17           MS. DUARTE:  Yeah.

18           THE COURT:  Well, what about Exhibit 19, I'm coming

19   to collect from you personally?

20           MS. DUARTE:  Exhibit 19 and 20 were the same, Your

21   Honor.  Those were seen by Greenwood and identified by her at

22   trial.  And again, those were a series of web pages that

23   Count 4 came out of.  However, they did contain language that

24   wasn't specifically charged in Count 4.

25           THE COURT:  So?

```
 1              MS. DUARTE:  And I --
 2              THE COURT:  Even assuming that I have the basis to
 3    find that 19 and 64 were separate communications, you need
 4    one more as to Greenwood.
 5              MS. DUARTE:  Because it's more than two?
 6              THE COURT:  Yes.
 7              MS. DUARTE:  Two or more.  If I could just have one
 8    moment.
 9              Your Honor, I can't think offhand of anything other
10    than is in the trial exhibits.  And I apologize.  I -- I
11    didn't know that this was an issue.  I --
12              THE COURT:  Well, look, I have to know --
13              MS. DUARTE:  It was an oversight on my part.  It
14    was my fault.
15              THE COURT:  Well, if it's an oversight, it's a very
16    understandable one because these Guidelines are incredibly
17    difficult to apply.  And were it not for the assistance I
18    sometimes get from the probation office, I would undoubtedly
19    make lots of mistakes.
20              MS. DUARTE:  Well, paragraph 46 --
21              THE COURT:  And lawyers frequently do.  So don't
22    lash out at yourself.
23              MS. DUARTE:  Paragraph 46 did seem to indicate that
24    it could be different than I briefed it and I -- I didn't --
25              THE COURT:  Yeah, but I think paragraph 46 is
```

```
 1    wrong.
 2              MS. DUARTE:  I think that that's correct, Your
 3    Honor.  And I don't have any --
 4              THE COURT:  So I have to tell you that I'm going to
 5    stick to the calculations and that leaves me with a Guideline
 6    Range of 37 to 46.
 7              Yes, Mr. Sutcliffe?
 8              MR. SUTCLIFFE:  Thank you, Your Honor.  Your Honor,
 9    before you conclude, could you just, um -- I was trying to
10    write as fast as I could to keep up with you earlier.  Could
11    you just kind of walk me real quickly through the grouping
12    analysis that you came to?  You said --
13              THE COURT:  Counts 1, 2 and 4 are grouped.  And of
14    those counts, the one that drives the analysis is Count 4.
15    And the adjusted offense level for that is 18, consisting of
16    base offense level 12 and 6 level enhancement for the conduct
17    evidencing an intent to carry out the threat.
18              MR. SUTCLIFFE:  Right.
19              THE COURT:  All of Counts 5 through 9 are grouped.
20    They have an adjusted offense level of 8.
21              If you apply the very unusual grouping requirements
22    of Section 3D1, you increase the higher level of those two
23    different sets of group, the 18, by 2 when you take into
24    account the total number of units that --
25              MR. SUTCLIFFE:  Are you sure that's not one, Your
```

1    Honor?

2          THE COURT:  I am.  It was one in the old -- it was

3    one the way the presentence report read but the presentence

4    report was based on the wrong calculations.

5          MR. SUTCLIFFE:  Ah.  I'll object to it.

6          THE COURT:  Okay.

7          MR. SUTCLIFFE:  Thank you, Your Honor.

8          THE COURT:  All right.  Now let's -- it's very late

9    in the afternoon and we've been going a long time.  I'm at

10   the point now where I've made my rulings and made my findings

11   and so it's up to each side to address where they think I

12   should come out on the Guidelines, on the sentence 'cause I'm

13   not going to make any other changes in the findings.

14         You go first, please.

15         MS. DUARTE:  Government's asking for a sentence at

16   the top of the applicable Guideline Range which, given the

17   Court's rulings, I believe would be 46 months.

18         THE COURT:  All right.

19         MS. DUARTE:  And I'll submit it on my papers.

20         THE COURT:  Mr. Sutcliffe?

21         MR. SUTCLIFFE:  Thank you, Your Honor.

22         THE COURT:  You might as well take this opportunity

23   now to exercise your right, not only in addressing where in

24   the Guideline Range but anything else you'd like to be heard

25   about.

```
 1        a couple of things to both sides.  Do you have it before
 2        you, Mr. Sutcliffe?
 3                MR. SUTCLIFFE:  What is it?
 4                THE COURT:  The recommendation letter.
 5                MR. SUTCLIFFE:  Recommendation letter?  From?
 6                THE COURT:  It's from the probation office.  It has
 7        the date March 22nd on it.
 8                MR. SUTCLIFFE:  The amended one?
 9                THE COURT:  No.
10                MR. SUTCLIFFE:  Oh.
11                THE COURT:  Would you show him what it looks like,
12        Mr. Reed?
13                MR. REED:  I don't think I brought it with me, Your
14        Honor.
15                THE COURT:  All right.  Now, while the clerk is
16        making a copy and given the very late hour, I'll make a
17        couple of statements.
18                Mr. Sutcliffe, in his declaration, provided an
19        adequate basis for me to find that he lacks the capacity
20        to pay a fine.  I am not going to require a fine.  I think
21        it would be an unnecessary and unfounded thing.
22                He has clearly continued his attitude and behavior
23        by refusing to cooperate with the probation office but he
24        submitted this declaration.  And all the facts and all the
25        circumstances permit me to make the finding, require me to
```

```
 1    make the finding that he can't pay the fine.  And I don't
 2    want to set him up for further altercations with law
 3    enforcement officers when he does get out.
 4          MR. REED:  Your Honor, I just found the
 5    recommendation letter.
 6          THE COURT:  Okay.  Now, I don't see any basis
 7    whatsoever to include paragraphs 3 and 4 of the
 8    recommendation.  Mr. Sutcliffe doesn't have a substance
 9    abuse problem, doesn't need to be subjected to drug and
10    alcohol testing, doesn't need to be treated for a narcotic
11    addiction or drug dependency.  I'm not going to
12    incorporate those into the judgment and commitment order.
13          As to the government's request for an employer
14    disclosure provision, I don't know exactly what you're
15    talking about so what do you mean?
16          MS. DUARTE:  I was talking about that would require
17    him, upon being hired by an employer, to disclose his
18    criminal conviction.  I've actually seen them in other
19    sentencings so that's why I asked for it.
20          THE COURT:  And what's the reason for that?
21          MS. DUARTE:  Such that the employer can make the
22    necessary adjustments as needed in order to protect
23    itself.
24          THE COURT:  Well, the other provisions in this
25    recommendation which do address the concerns that Tracy
```

1    Hall expressed about computer access and the like I think

2    provide sufficient protection for prospective employers.

3    If prospective employers have other concerns relating to

4    felony or other criminal backgrounds, they can ask about

5    those in the ordinary course, and typically they do, and

6    he will have the obligation to respond honestly.  So I'm

7    not going to grant that additional protection.  I don't

8    think it's warranted under the circumstances.

9         I am going to change and clarify and make precise

10    paragraph 13 to incorporate the names of particular people

11    including Miss Hall.

12         I'm going to impose the sentence at the high end.

13    After I finish reciting it, which is a technical

14    requirement, I will explain why.  Here is the sentence.

15    It's based upon a Guideline Sentencing Range of 37 to 46

16    months.  That's based upon an offense level of 20 and a

17    criminal history category of 2.

18         It is ordered that the defendant shall pay the

19    United States a special assessment of $800 which is due

20    immediately.  I find that the defendant lacks adequate

21    resources to pay a fine and so I waive the requirement

22    that he do so.

23         The defendant shall comply with General Order

24    Number 0105.  Pursuant to the Sentencing Reform Act of

25    1984, it's the judgment of the Court that the defendant,

1    Steven William Sutcliffe, is hereby committed on Counts 1,

2    2 and 4 through 9 of the 9-count first superseding

3    indictment to the custody of the Bureau of Prisons to be

4    imprisoned for a term of 46 months.  The term consists of

5    46 months on each of Counts 1, 2 and 4 and 36 months on

6    each of Counts 5 through 9 of the first superseding

7    indictment, all to be served concurrently.

8         Upon release from imprisonment, he shall be placed

9    on supervised release for a term of three years.  That

10   term consists of three years on each of Counts 1, 2 and 4,

11   and one year on each of Counts 5 through 9, all those

12   terms to run concurrently under the following terms and

13   conditions.

14        First, he shall comply with the rules and

15   regulations of the U.S. Probation Office and General

16   Order 318.

17        Next, during the period of community supervision,

18   he shall pay the special assessment in accordance with

19   this judgment's orders pertaining to that payment.

20        Next, he shall participate in mental health

21   treatment which may include evaluation and counseling

22   until discharged from the treatment by the treatment

23   provider with the approval of the probation officer.

24        Next, he shall grant a limited waiver of his right

25   of confidentiality and any records of mental health

1    treatment imposed as a consequence of this judgment to

2    allow the treatment provider to provide information to the

3    probation officer and sign all necessary release forms to

4    enable the probation officer to monitor the defendant's

5    progress.

6         Next, the probation officer shall disclose the

7    presentence report, enter any previous mental health

8    evaluations or reports to the treatment provider.  The

9    treatment provider may provide information, excluding the

10   presentence report, to state or local social services

11   agencies, such as the State of California Department of

12   Social Services, for the purpose of the defendant's

13   rehabilitation.

14        Next, as directed by the probation officer, the

15   defendant shall pay all or part of the costs of treating

16   any psychiatric disorder to the aftercare contractor

17   during the period of community supervision pursuant to

18   18 USC 3672.  The defendant shall provide payment and

19   proof of payment as directed by the probation office.

20        Now come a number of restrictions applicable to

21   computer access and use.  The defendant shall use only

22   those computers and computer-related devices, screen user

23   names, passwords, E-mail accounts and internet service

24   providers or ISPs as approved by the probation officer.

25   Computers and computer-related devices include, but are

1    not limited to, personal computers, personal data

2    assistants or PDAs, internet appliances, electronic games

3    and cellular telephones, as well as their peripheral

4    equipment, that can access or can be modified to access

5    the internet, electronic bulletin boards and other

6    computers or similar media.

7         Next, all computers, computer-related devices and

8    their peripheral equipment used by the defendant shall be

9    subject to search and seizure, and the installation of

10   search and/or monitoring software and/or hardware,

11   including unannounced seizure for the purpose of search.

12   The defendant shall not add, remove, upgrade, update,

13   reinstall, repair or otherwise modify the hardware or

14   software on the computers, computer-related devices or

15   their peripheral equipment; nor shall he hide or encrypt

16   files or data without prior approval of the probation

17   officers.  And he shall provide all billing records,

18   including telephone, cable, internet, satellite, and the

19   like as requested by the probation officer.

20        Next, the defendant shall use computers and

21   comparable computer devices only within the scope of his

22   employment and shall not access a computer for any other

23   purpose.  He shall immediately report any changes at his

24   place of employment or of his employer, not just his

25   location but his employer in regard to his internet access

1    and computer use.

2         The defendant shall not possess or use a computer

3    with access to any online service at any location,

4    including his place of employment, without prior approval

5    of the probation officer.  This includes access through

6    any internet service provider, bulletin board system or

7    any public or private computer network system.

8         The next few words I've changed from what you may

9    have before you.  The defendant shall not request, cause

10   or allow another individual access to the internet on his

11   behalf to obtain files or information which he has been

12   restricted from accessing himself or accepting restricted

13   files or information from any other person.

14        Next, the defendant shall not contact the victims

15   individually identified in the first superseding

16   indictment, Gary Winnick, Tracy Hall and Elizabeth

17   Greenwood, by any means, including in person, by mail or

18   electronic means or via third parties.  The same

19   restriction shall apply to Mr. Labaton, L-A-B-A-T-O-N, and

20   Mr. Block.  Similarly, he shall not contact any of the

21   witnesses except for Leslie McAfee whom he may contact and

22   his wife whom he may contact, subject to whatever other

23   court orders may apply concerning the wife.

24        Further, he shall remain at least a hundred yards

25   from such victims and witnesses at all times.  If any

1    contact occurs, the defendant shall immediately leave the

2    area of contact and report the contact to the probation

3    officer.

4            The Court strongly recommends that Mr. Sutcliffe be

5    confined in a penal institution in Southern California.

6            As to my decision to sentence him to the high end

7    of the Guideline Range, it's a reflection of my very

8    considered view that the offenses that Mr. Sutcliffe

9    committed warrant very firm punishment and that he, even

10   through this afternoon, continues to display a refusal to

11   acknowledge that, like every other citizen in this

12   country, he is subject to the evenhanded application of

13   all of the laws.

14           If there were a crime, Mr. Sutcliffe, that

15   consisted of arrogance, I would depart upward to sentence

16   you to a much longer sentence.  Just today, you continued

17   to refer to your prior lawyers as the public pretenders.

18   You displayed that view that you were above everyone

19   else's authority and they are beneath your contempt, to

20   witnesses, to lawyers, to landlords, to the LAPD, to this

21   Court.

22           You are indeed very clever.  You're a terrific

23   wordsmith.  For you to sit here today and say what you

24   heard is not understanding how your words could have been

25   construed by other people is a joke.  For you to come up

1    with the notion that armed meant armed with information is

2    simply a reflection of how you like to manipulate the

3    situation and the words that got you here to your own

4    advantage.

5         The acceptance of responsibility that you requested

6    is absent.  The sentence that you serve I hope will

7    reinforce what your words were and reach or help you reach

8    the point where you really mean them and can act on them.

9         The fact is, Mr. Sutcliffe, that as a result of the

10   supervised release terms I've just recited, you are going

11   to be subject, far more than most of us, most citizens, to

12   continuing supervision and authority.  And if you have a

13   problem with authority, as your whole life seems to

14   exemplify, you will be digging a huge hole for yourself,

15   one that will undoubtedly result or could result in

16   additional lengthy period of incarceration.

17        If you rebel at these provisions, if you refuse to

18   comply with them, if you bait or antagonize or obstruct

19   the work of whoever is the probation officer, I hope you

20   won't do it, I hope so for a lot of reasons but I have my

21   doubts.  So please take into account these considerations.

22        Now, Mr. Reed, what did you bring in terms of a

23   notice of appeal?

24        MR. REED:  Your Honor, what I brought the Court

25   today were a notice of appeal, an original and a copy.

```
1              THE COURT:  Has it been signed?

2              MR. REED:  No, they haven't been signed, Your

3        Honor, yet.

4              THE COURT:  You give them to Mr. Sutcliffe.

5              MR. REED:  And I also -- they're all --

6              THE COURT:  Now, let me just say that you have a

7        right -- I'm going to be formalistic but I know you

8        understand this already, Mr. Sutcliffe, you have a right

9        to appeal both the findings of guilt and the sentence.

10       And the piece of paper that I instructed Mr. Reed to

11       prepare, which does not contain a lawyer's name but is

12       prepared for you -- am I right about that --

13             MR. REED:  Yes, Your Honor.

14             THE COURT:  Okay.

15             MR. REED:  Can I approach your clerk?

16             THE COURT:  -- Will enable you timely, and you have

17       to make sure it's timely, it has to be done within ten

18       days of this judgment, to prosecute an appeal.

19             Did you also bring the document requesting the

20       appointment of counsel on appeal?

21             MR. REED:  Yes, Your Honor, I have.

22             THE COURT:  Okay.  Am I supposed to sign either of

23       these?

24             MR. REED:  No, no.  I just wanted the Court to have

25       a copy so --
```

```
 1              THE COURT:  Okay.
 2              MR. REED:  -- You can see what it looks like, Your
 3    Honor.
 4              THE COURT:  All right.  Please give those to
 5    Mr. Sutcliffe if he wishes to appeal, and if he wishes to
 6    have the benefit of counsel to represent him on appeal so
 7    he has the opportunity to so arrange.
 8              MR. REED:  And I'm handing the documents to him,
 9    Your Honor.  I've prepared that as well.
10              THE COURT:  Okay.  The reasons for the sentence are
11    reflected in my statement on the transcript.  I
12    incorporate them by reference and they will be part of the
13    file in this case.
14              Anything further, counsel?
15              MS. DUARTE:  Nothing further, Your Honor.
16              THE COURT:  All right.  We're adjourned.
17              MS. DUARTE:  Thank you, Your Honor.
18              THE COURT:  I just want -- can I speak?  The record
19    will reflect that the copies of the letters that
20    Ms. Duarte requested that I referred to that people have
21    sent me will also be made available to Mr. Sutcliffe.
22              Thank you.
23                 (Proceedings concluded at 5:18 p.m.)
24
25
```

```
 1                    CERTIFICATE OF REPORTER

 2

 3    COUNTY OF LOS ANGELES    )
                               )  SS.
      STATE OF CALIFORNIA      )
 4

 5    I, KATHLEEN L. MECHANIC, OFFICIAL REGISTERED PROFESSIONAL

 6    REPORTER IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 7    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 8    I REPORTED, STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT

 9    THE TIME AND PLACE HEREINBEFORE SET FORTH; THAT THE SAME

10    WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY MEANS OF

11    COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER CERTIFY

12    THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

13    STENOGRAPHIC NOTES.

14

15    DATE:  Jan. 28, 2005

16

17    _____
      KATHLEEN L. MECHANIC, RPR
18    FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```

## CERTIFICATE OF SERVICE

I, **CAREY P. CRONIN**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of the United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California, 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MODIFICATION OF SUPERVISED RELEASE UNDER 18 U.S.C. § 3583; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD L. CHENG; EXHIBIT**

[] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[X] Placed in a sealed envelope, for collection and mailing via United States Mail, addressed as follows:

[] By hand deliver addressed as follows:

[] By facsimile as follows:

[ ] By messenger as follows:

[] By federal express as follows:

Steven Sutcliffe
8959 Bartee Avenue
Arleta, CA 91331

Isaiah Muro, USPO
21041 Burbank Blvd., Suite 200
Woodland Hills, CA 91367-6606

This Certificate is executed on January 7, 2008 at Los Angeles, California

I certify under penalty of perjury that the foregoing is true and correct

**CAREY P . CRONIN**